UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHERI REID,

       Plaintiff,

                                Case No. 18-cv-12099

v.

                                Paul D. Borman
                                United States District Judge


BANK OF AMERICA, N.A., a           Stephanie D. Davis
Delaware Corporation, and           United States Magistrate Judge
AVIS BUDGET GROUP, INC., a
Delaware Corporation,


       Defendants.

_____/

ORDER DENYING DEFENDANT AVIS BUDGET GROUP, INC.'S AMENDED
MOTION TO DISMISS COUNT V OF PLAINTIFF'S
COMPLAINT (ECF #22)

**I.**      BACKGROUND

Before the Court is Defendant Avis Budget Group, Inc.'s ("Avis-Budget") Amended

Motion to Dismiss Count V of Plaintiff's Complaint[1] pursuant to Federal Rule of Civil

Procedure 12(b)(6). (ECF #22.) Count V contains the only claim against Avis-Budget and

---

[1] Plaintiff filed her First Amended Complaint as a matter of right on August 27, 2018. (ECF#17.) (*See* Section II, Procedural History, *infra.*)

alleges unjust enrichment against both Avis-Budget and Defendant Bank of America, N.A. ("BANA"). (*Id.* at ¶¶77-82, PgID 254-55.) The facts as alleged in a complaint are taken as true for purposes of a motion to dismiss. *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

Plaintiff Cheri Reid closed her BANA credit card account ("Account") on November 4, 2017 "in accordance with the card member agreement." (Am. Compl. ¶7, ECF #17.) At that time, there was no balance on the Account, and Plaintiff believed that no charges were preauthorized. (*Id.* at ¶9.) Plaintiff received a letter from BANA dated November 4, 2017 confirming that the Account was closed and there was no balance on the Account, but also noting that, "Since some transactions may be preauthorized or may not require authorization, some new charges may still occur." (*Id.* at Ex. 2, ECF #17-3.)

On December 2, 2017, BANA allegedly re-opened the Account and processed a charge in the amount of $3,686.17 from Avis-Budget. (*Id.* at ¶11.) That day, an individual named Leslie Reid (Plaintiff's step-daughter, according to Avis-Budget (Mtn. P. 4, Fn. 2, PgID 334, ECF #22)) had returned a car to Avis-Budget, which she had rented on October 8, 2017 using Plaintiff's Account numbers. (Am. Compl. Ex. 10, ECF #17-11). Plaintiff noticed the charge on December 9, 2017. (*Id.* at ¶12.) She alleges that she called BANA on December 12, 2017 to dispute the charge and inquire as to why the Account had been re-opened, at which point a BANA representative informed her that closed consumer credit accounts could be re-opened and charged for up to one year from the date the account was

closed. (*Id.* at ¶12-13.) Plaintiff informed BANA that she did not authorize the Avis-Budget

charge nor "was the card physically present at" the Avis-Budget rental location for

processing. (*Id.* at ¶16.) Plaintiff also called the Avis-Budget rental location at BANA's

direction, but Avis-Budget would not discuss the charge with Plaintiff because she was not

the individual who executed the rental agreement (*i.e.*, Leslie Reid). (*Id.* at ¶18.)

On January 1, 2018, another charge from Avis-Budget appeared on the Account in

the amount of $250, and Plaintiff called BANA to dispute this additional charge. (*Id.* at

¶20-21.) On January 8, 2018, BANA sent Plaintiff a letter stating that it was blocking

Avis-Budget from charging Plaintiff's account any further, unless Plaintiff notified BANA

to remove the block. (*Id.* at ¶24.)

In a January 10, 2018 letter to Plaintiff, BANA stated that it had completed its

investigation of the two charges and was "unable to determine that a billing error occurred

based on the information or documentation available." (*Id.* at ¶26; *id.* at Ex. 10, ECF #17-

11.) Further, the letter explained:

> Rental agencies typically reserve the right to bill for amounts that
> cannot be determined at the time of rental, such as extra miles, extra
> days, refueling, and damages. These charges are classified as a final
> audit. Because the rental agency can explain the additional charge(s),
> this type of charge is considered valid.
>
> We understand that you weren't satisfied with the outcome of the
> service the merchant provided, but they have the right to receive
> payment for any services that were rendered.

(*Id.* at Ex. 10, PgID 226, ECF #17-11.)

The January 10, 2018 correspondence from BANA also included a copy of the receipt for the vehicle rental. (*Id.* at PgID 227.) The receipt includes the contract number, ending in 3014, and the customer name, Leslie Reid. (*Id.*) The rental vehicle was picked up on October 8, 2017 in Cicero, New York. (*Id.*) It was returned on December 2, 2017 (*id.*), the same day of the $3,686.17 charge to Plaintiff's Account. The receipt itself is not dated but reflects a total charge of $3,936.17, the sum of the two disputed charges. (*Id.*) (Again, the second charge for $250 was not posted to Plaintiff's Account until January 1, 2018, which appears to be a one-day late fee based on the Avis-Budget receipt.) (*Id.*)

On January 18, 2018, Plaintiff and her attorney contacted Avis-Budget, yet again at BANA's direction, and Avis-Budget reiterated that it would not discuss the matter with anyone other than the party to the rental agreement. (Am. Compl. at ¶28, PgID 244.)

Throughout the course of communication between Plaintiff's counsel with BANA and Plaintiff's attempted communications with Avis-Budget,[2] BANA re-opened its inquiry (January 23, 2018 (*id.* at ¶30)), closed its inquiry (February 7, 2018 (*id.* at ¶31; Ex. 11, PgID 229)), re-opened it (February 12, 2018 (*id.* at ¶33)), and finally closed the inquiry on February 16, 2018 (*id.* at ¶34).

---

[2] Attempted communication with Avis-Budget includes a February 8, 2018 letter to Avis-Budget's legal department, the rental location, and copied to BANA, asserting in relevant part that, "The party to the attached agreement [which appears to be only the receipt for the rental, rather than the rental agreement] is neither an authorized user nor did they [sic] pose [sic] the card for presentment to your organization at any time. My client at no time gave authorization as required by the card member agreement nor was this a pre-authorized transaction." (Am. Compl. Ex. 15, PgID 236.)

In correspondence to Plaintiff from BANA dated February 16, 2018, BANA stated that it was unable to obtain credit for Plaintiff's Account from Avis-Budget, considered her claim resolved, and would not respond to any further inquiries. (Am. Compl. Ex. 13, PgID 233.)

As of February 18, 2018, Plaintiff's Account showed a balance reflecting the two disputed charges as well as accrued interest and a payment due. (*Id*. at ¶35.) To avoid damage to her credit rating, Plaintiff made three payments of unspecified amounts to BANA towards the Account balance in March, April and May 2018. (*Id.* at ¶¶36-38.)

## II.    PROCEDURAL HISTORY

On May 10, 2018, Plaintiff Cheri Reid filed her Complaint in the 15th District Court for the County of Washtenaw. (ECF #1-1.) On July 5, 2018, BANA removed the action to this Court.  (ECF #1.) On August 2, 2018, Defendant Avis Budget Group, Inc. ("Avis-Budget") filed a Motion to Dismiss Counts III (Violation of 15 U.S.C. §1693e(a) Electronic Funds Transfer Act), V (Violation of 12 C.F.R. §1005.10 Pre-authorized Transfer to Consumer's Account), VI (Negligent Hiring, Supervision and Retention), X (Negligent Infliction of Emotional Distress) and XI (Common Law Negligence) of Plaintiff's Complaint. (ECF #9.) On August 13, 2018, BANA filed its Answer and Affirmative Defenses. (ECF #11.)

On August 27, 2018, Plaintiff filed her First Amended Complaint ("Amended Complaint") as a matter of right. (ECF #17.)  The Amended Complaint dropped all Counts

against Avis-Budget with the exception of Count V, a state law claim for unjust enrichment. (*Id.*) On September 10, 2018, Avis-Budget filed its Amended Motion to Dismiss Count V of Plaintiff's Complaint. (ECF #22). On September 24, 2018, Plaintiff filed her Response (ECF #24), and on October 8, 2018, Avis-Budget filed its Reply (ECF #25.) Without leave of Court, Plaintiff filed a Sur-Reply on October 22, 2018 (ECF #27), which the Court struck on October 25, 2018 (ECF #28). On November 11, 2018, the Court held a hearing on Avis-Budget's Motion to Dismiss.

### III.    STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (internal quotation marks omitted).   The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal quotation marks and citations omitted).   *See also Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555 (internal quotation marks and citations omitted) (alteration in original). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 678." Thus, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into

a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (Internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## IV.   ANALYSIS

The issue at bar is whether Avis-Budget has unjustly retained a benefit from Plaintiff. Because all assertions in the Complaint must be taken as true, the Court finds

that, at this stage of the proceedings, Plaintiff has stated a claim for unjust enrichment against Avis-Budget.

"Whether a specific party has been unjustly enriched is generally a question of fact ... [however,] whether a claim for unjust enrichment can be maintained is a question of law." *Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 921 (E.D. Mich. 2007). A claim of unjust enrichment requires the complaining party to establish: (1) the receipt of a benefit by the other party from the complaining party; and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party. *Karaus v. Bank of New York Mellon,* 300 Mich. App. 9, 23 (2012). "Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, [a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194 (2006) (internal quotation marks omitted). The law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. *Id*. A contract will be implied, however, only if there is no express contract covering the same subject matter. *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478 (2003).

Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit. *Morris Pumps* at 903. In general,

> [a] third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not *requested the benefit* or *misled* the other parties.... Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person.

*Karaus* at 24 (citing 66 Am. Jur. 2d, Restitution and Implied Contracts, § 32, p. 628) (internal quotations omitted) (emphasis added).

Avis-Budget does not discuss whether Plaintiff has adequately alleged the first element of an Unjust Enrichment claim – that Avis-Budget has received a benefit from Plaintiff (payment for the rental vehicle). In its Motion to Dismiss, Avis-Budget addresses the pleading of the second element and argues that, although it did receive a benefit from Plaintiff, its retention of that benefit was not unjust because it had provided a service and was rightfully compensated. (Mtn., p. 7, PgID 337, ECF #22.) Avis-Budget contends that it equitably received the payment for the rental vehicle as a result of Plaintiff's contract with BANA. (*Id.*) Avis-Budget maintains that it was a third party recipient of a benefit from Plaintiff, without having misled or requested that benefit from the other parties.

Plaintiff contends that Avis-Budget was misleading when it failed to follow its own policy, published on the company website under the "Payment Options FAQ" section. (Resp. pp. 3-5, PgID 351-353, ECF #24.) The "Payment Options FAQ" included the question, "Can I use another person's credit card with their permission?" (Am. Compl., Ex.

10

15, ECF #17-16.) The response, presumably a portion of what is included in Avis-Budget's internal policies, stated: "No. At the time of the rental, the renter is required to present a valid driver's license and credit card with his/her name on imprinted on it. The name/address on the credit/ debit card MUST match the name/address on the driver's license." (Am. Compl. ¶39; *see also id.* at Ex. 15, ECF #17-16) (emphasis in original).

Plaintiff, however, has not alleged that *she* was misled for purposes of third party unjust enrichment by Avis-Budget's statement on its website. The only allegations in the Complaint are the above-mentioned comments on documentation. Plaintiff does not aver how or when she was misled, or could have been misled, by the website in connection with Leslie Reid's vehicle rental or any benefit to Avis-Budget by way of Plaintiff. Plaintiff's entire predicament stems from the allegation that she did not know that the BANA Account was being charged in the first place.

Moreover, it is well established in Michigan that "an institution's internal rules and regulations do not add to its obligations to the public…." *Gorsline v. Speedway LLC*, No. 16-CV-13002, 2017 WL 6539052, at *3 (E.D. Mich. Dec. 21, 2017) (citing *McKernan v. Detroit C. S. R. Co.*, 136 Mich. 519, 524 (1904)). *See also Buczkowski v. McKay*, 441 Mich. 96, 99 n.1 (1992) (noting that "[i]mposition of a legal duty on a retailer on the basis of its internal policies is actually contrary to public policy. Such a rule would encourage retailers to abandon all policies enacted for the protection of others in an effort to avoid future liability.") Avis-Budget's publication of the "Payments Options FAQ" is therefore

11

insufficient to support the notion that Avis-Budget misled Plaintiff and therefore was unjustly enriched as a matter of law, but this does not vitiate Plaintiff's claim.

Regardless of the website language, it is important to note that the date(s) when Avis-Budget became aware of the dispute over the December 2, 2017 $3,686.17 charge and the January 1, 2018 $250 charge is not evident at this early stage. "If defendant's retention of the [benefit] had been completely innocent and without knowledge, [a court] may be inclined to conclude that defendant's enrichment was not unjust." *Morris Pumps* at 905. The opposite is also true.

In *Morris Pumps*, the Michigan Court of Appeals affirmed that the defendant had been unjustly enriched as a third party to an agreement when it had knowledge that it was using materials for which the plaintiff had never been paid. *Id.* The defendant was a replacement general contractor for the original contractor that had a contract with the plaintiff. *Id.* at 904-05. The original contractor had abandoned a project without compensating the plaintiff for certain materials left at the jobsite. *Id.* at 905. The defendant, with knowledge that the plaintiff had never received payment, then allowed the use of those materials to complete the job. *Id.* The Court affirmed the plaintiff's partial motion for summary judgment, finding that the defendant's retention of the benefit had been unjust.

Here, it would be premature to dismiss Plaintiff's Unjust Enrichment claim, as the extent and timing of Avis's knowledge is unknown. Plaintiff alleges that a second charge was placed on the Account after she disputed the first charge on December 9, 2017, and

despite her efforts, she ultimately paid for the entire balance of the rental vehicle charges because Avis-Budget refused to forego payment from BANA. Plaintiff has indeed pled that an inequity has resulted to her because Avis-Budget retained a benefit.

Plaintiff also maintains that there was an express agreement between herself and BANA from some previous date until November 4, 2017 when she closed the Account. (Am. Compl. ¶7, PgID 240, ECF #17.) Plaintiff acknowledged in the Amended Complaint that she was informed by a BANA representative that an account could be re-opened for up to one year after the initial closing of the account (*id.* at ¶14, PgID 241), but she does not concede that her Account was rightly re-opened and/or that the charges to Avis-Budget were made per the terms of any ongoing agreement between BANA and herself. She alleges that she did not authorize or pre-authorize the charges (*id.* at ¶41, PgID 247), and the Complaint contains a litany of Plaintiff's efforts to obtain a refund from BANA or Avis-Budget for the two charges.

Avis-Budget raises the point in its Response that a card member agreement is not synonymous with a credit card account. (Reply P. 4, PgID 364, ECF #25.) Avis-Budget takes the position that the card member agreement remained valid and in force beyond the date the Account was closed (*id.*) and argues that, as alleged by Plaintiff, the disputed

charges were the result of *BANA's* breach of its agreement with Plaintiff (Mtn. P. 7, PgID 337, ECF #22), and Avis-Budget is an innocent third party.[3]

Avis cites *Karaus v. Bank of New York Mellon,* 300 Mich. App. 9, 23 (2012) for the proposition that "a third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties…." The third party in *Karaus*, a mortgagee, was "completely uninvolved with any negotiations that had occurred before the [alleged benefit]…." *Id.* at 24.

*Karaus* is readily distinguishable from the case at bar because, here, it was Plaintiff, rather than Avis-Budget, who was allegedly clueless as to any transaction involving the BANA Account prior to the completion of the vehicle rental service and Avis-Budget's receipt of the benefit. Plaintiff's allegation that an inequity has resulted from Avis-Budget's retention of the payment is sufficient to withstand Avis-Budget's Motion. *Karaus* at 24.

Lastly, because the card member agreement has not been provided, it is not yet possible to determine the exact provisions that governed the Parties' relationship and Plaintiff's Account, nor is it possible to determine whether the card member agreement was in effect at the time of the two Avis-Budget charges. Regardless, Plaintiff has alleged

---

[3] The finger-pointing does not stop here. Plaintiff maintains that Avis-Budget should have sought payment from Leslie Reid (the individual who rented the vehicle and possibly Plaintiff's stepdaughter) rather than from Plaintiff. (Avis-Budget technically pursued BANA for payment, not Plaintiff.) Not coincidentally, Avis-Budget also argues that Leslie Reid is likely responsible for the damages in this matter.

that there was no enforceable agreement between herself and BANA and no "open" credit card Account after November 4, 2017, but the vehicle rental commenced on October 8, 2017 – almost one month before the Account was closed. Further discovery may discern Avis-Budget's status (that is to say, as a third party obtaining an equitable benefit resulting from the BANA-Plaintiff card member agreement, or not), and who was liable to Avis-Budget after November 4, 2017 under the circumstances of the rental.

## V. CONCLUSION

For the reasons above, Defendant Avis Budget Group, Inc.'s Amended Motion to Dismiss Count V of Plaintiff's Complaint is DENIED.

IT IS SO ORDERED.


Dated: January 29, 2019                    s/Paul D. Borman
                                           Paul D. Borman
                                           United States District Judge